RECEIVED
IN ALEXANDRIA, LA

AUG 2 4 2009

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA. DIVISION

LENISE SMITH
    Appellant    CIVIL ACTION NO. 08-1682
VERSUS

MICHAEL J. ASTRUE,    JUDGE DEE D. DRELL
COMMISSIONER OF SOCIAL SECURITY  MAGISTRATE JUDGE JAMES D. KIRK
    Appellee

## REPORT AND RECOMMENDATION

Lenise Smith ("Smith") filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on or about August 3, 2006 alleging a disability onset date of May 1, 2006 (R. 100-105). The applications were denied December 14, 2006 and Smith filed a request for hearing on December 22, 2006 (R. 76-80). A hearing was held by Administrative Law Judge ("ALJ") Ruth Markart who issued an unfavorable decision on April 9, 2008 (R. 13-20). Hardy appealed the decision and the Appeals Council declined review on August 28, 2008 (R. 1-3, 5-9). Thus, the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner").

To qualify for SSI and/or DIB, a claimant must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. 1381(a). Eligibility is dependent upon disability, income and other financial resources. 42 U.S.C. 1382(a). To establish disability, a claimant must demonstrate a medically

determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve (12) months. Claimant must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 42 U.S.C. 1382(a)(3).

## Scope of Review

In considering Social Security appeals such as the one that is presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether there were any prejudicial legal errors. Crouchet v. Sullivan, 885 F.2d 202, 204 (5th Cir. 1989). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 482 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight. Singletary v. Bowen, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981). Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. Dellolio, 705 F.2d at 125. But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." Johnson v. Bowen, 864 F.2d 340 (5th Cir. 1988); Dellolio, 705 F.2d at 125.

## SUMMARY OF PERTINENT FACTS

Smith alleged disability due to HIV, muscle cramps and numbness, dry mouth, blurry vision, headache, anxiety, memory loss and diarrhea (R. 100-105). She quit her job at Vidalia Apparel after nearly eleven years due the side effects caused by the medication she took for HIV (R. 33). Smith advised that the most significant side effect of her medication was diarrhea which she experienced two times a day, three to four times a week. As a result, she experienced dehydration and took potassium pills (R.

41).

In addition to the aforementioned HIV, Smith complained of neuropathy in her hands, legs and feet as well as cramping in her extremities and abdomen. She was prescribed Gabapentin (a generic of Neurontin) for the neuropathy and Hydrocodone for the pain associated with the cramping (R. 38).

Smith further advised she saw a psychiatrist, Dr. Balwahn [1], beginning in approximately January of 2008 on an average of three times a month to treat her anxiety. She was prescribed Fluxoetine to help with her depression (R. 43).[2]

Smith stated that she can sit thirty minutes at a time, walk fifty yards, stand fifteen minutes, climb three or four steps, reach forward and up, lift ten pounds and grab small items. However, she could not stoop, kneel or squat. She could follow simple instructions and deal with supervisors but she could not deal with crowds and noise. Approximately two times a week she was incapacitated by pain (R. 58-65).

At the time of the hearing, Smith lived with her daughter and grandchild. She spent her days reading, watching television,

---

[1] Thought the hearing transcript refers to Dr. Bernard, Smith's brief and the medical records properly identify the doctor as Dr. Balwahn.

[2] Medical records reveal Smith first saw Dr. Balwahn on February 12, 2008 and again on February 26, 2008. He noted on the February 26, 2008 record that she should follow up with him in a month. Dr. Balwahn prescribed Prozac and Trazadone.

playing with her grandchild and fixing meals. She accompanied her daughter once a week to the grocery store and attended bible study once a week. However, she did not go out to eat nor did she visit with friends. She advised that she did care for herself but she could not do yard work or household chores (R. 50-53).

The ALJ found that Smith met the insured status requirement through December 31, 2011 and had not engaged in substantial gainful activity since the alleged onset date, May 1, 2006. She further found that her severe impairments included disorder of the lumbar spine, HIV, hypertension and neuropathy but none of these impairments, either alone or in combination, met or medically equaled one of the listed impairments. Ultimately, the ALJ found that Smith had the residual functional capacity to perform the full range of sedentary work and that jobs which she could perform exist in significant numbers in the national economy. Accordingly, the ALJ found Smith was not disabled (R. 15-20).

## Issues

In her brief, Smith raises the following issues:

(1) The ALJ erred in determining Smith did not suffer from a severe mental impairment; and

(2) The ALJ erred in assessing Smith's complaints regarding pain and disability as not credible.

## Discussion

### Mental Impairment

A claimant has the burden of proving they are disabled by

5

establishing they suffer from a severe mental or physical impairment. Cook v. Heckler, 750 F.2d 391 (5th Cir. 1985). A "severe" impairment is one which imposes more than a minimal limitation on an individual's ability to perform basic work-related physical or mental activities. See 20 C.F.R. §404.1521. If a claimant does not have a severe medically determinable impairment or combination of impairments, she is not disabled.

Smith contends that the ALJ did not recognize her mental impairments, anxiety and depression, as severe. According to Smith, she sought mental health treatment three times a month from Dr. B. Balwahn (R. 43). However, according to medical records from LSU Huey P. Long CD4 Outpatient Clinic, Smith was referred to Dr. Balwahn after complaining of an inability to sleep and extreme depression on February 8, 2008. Dr. Balwahn then saw Smith on February 12, 2008, diagnosed her with adjustment disorder with depressed mood and prescribed Prozac and Trazodone. On February 26, 2008, Dr. Balwahn noted a diagnosis of depressive disorder and maintained the prior prescription and dosage. (R. 316-317).[3] Prior to these visits, there is only a notation on record from Smith's June 16, 2006 visit to LSU Huey P. Long's CD4 Outpatient Clinic advising of prior diagnosis of anxiety disorder (R. 162). There

---

[3] A notation at the bottom of the February 26, 2008 record indicates Dr. Balwahn ordered Smith to return in one month. A hearing was held March 17, 2008 and no other medical records from Dr. Balwahn are located in the record.

are no other medical records supporting this anxiety disorder diagnosis. In fact, other than these three entries, there are no other treatment records and no records of any hospitalizations due to her alleged mental impairment.

The ALJ considered this minimal medical evidence, the Psychiatric Review Technique completed December 14, 2006 and the Listing of Impairments for mental disorder before finding Smith's "medically determinable mental impairments of anxiety and depression [did] not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." Specifically, the ALJ noted Smith's medically determinable mental impairment caused no more than a "mild" limitation on her activities of daily living, social functioning or concentration, persistence of pace and no limitation with respect to episodes of decompensation as there was no evidence Smith ever experienced an episode of decompensation. Substantial evidence supports the ALJ's conclusion as nothing in the record, including Dr. Balwahn's treatment notes, indicates otherwise.

Smith further contends the ALJ erred in failing to order a consultative examination. The ALJ has the discretion to order a consultative examination. An examination at government expense is not required unless the record establishes that such an examination is necessary to enable the ALJ to make the disability decision. Anderson v. Bowen, 887 F.2d 630, 634 (5th Cir. 1989). Also, Brock

v. Chater, 84 F.3d 726 (5th Cir. 1996); Wren v. Sullivan, 925 F.2d 123, 127 (5th Cir. 1991); Haywood v. Sullivan, 888 F.2d 1463, 1472 (5th Cir. 1989). The evidence in the record clearly and substantially supports the ALJ's determination that Smith did not suffer from a severe mental impairment. As no question existed, the ALJ properly exercised her discretion in not ordering a consultative psychological examination.

Complaints of pain and credibility

Smith contends that the ALJ failed to find her statements regarding her medical condition to be credible. In her brief (Doc. Item 11), she writes that the ALJ "stated that [Smith] stopped taking [her] medication as if [she] did it for no reason"; "that [Smith] had relatively minor problems with [her] back"; and that "[she] think[s] and feel[s] the judge was prejudiced against [her] from the start [the ALJ] assumed that since [Smith] had HIV that [she] was one of these people on drugs or something [the ALJ] already had her mind made up before the case was even presided on." (Doc. Item 11, p.1-2).

There is no indication from the record that the ALJ was biased. In fact, the hearing transcript reveals that the ALJ interacted with Smith throughout the hearing in a very friendly manner, understanding many of her positions. The medical evidence and Smith's own testimony support the ALJ's statement in the decision that Smith quit taking her medications and there are no

medical records from either Dr. Hasburn or Dr. Fairbanks recommending Smith undergo surgery for her back.

A claimant's symptoms, including pain, will be determined to diminish a claimant's capacity for basic work activities to the extent that the claimant's alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. §404.1529(c)(4). Although severe pain can constitute a nonexertional impairment, pain is a disabling condition only when it is constant, unremitting and wholly unresponsive to therapeutic treatment. Johnson v. Sullivan, 894 F.2d 683, 685 (5th Cir. 1990); Fraga v. Bowen, 810 F.2d 1296, 1304 (5th Cir. 1987).

While pain can be severe enough to create a disabling condition, the evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled. Elzy v. Railroad Retirement Bd., 782 F.2d 1223, 1225 (5th Cir. 1986); Loya v. Heckler, 707 F.2d 211, 215 (5th Cir. 1983). The ALJ's decision on the severity of pain is entitled to considerable judicial deference. James v. Bowen, 793 F.2d 702, 706 (5th Cir. 1986); Jones v. Bowen, 829 F.2d 524, 527 (5th Cir. 1987). Such a credibility determination is within the province of the ALJ. Carrier v. Sullivan, 944 F.2d 243, 247 (5th Cir. 1991); Wren v. Sullivan, 925 F.2d 123, 128-29 (5th Cir. 1991). Hence, the law

requires the ALJ to make affirmative findings regarding a claimant's subjective complaints and articulate his reasons for rejecting any subjective complaints. Falco v. Shalala, 27 F.3d 162, 163-64 (5th Cir. 1994).

The ALJ made the following findings as to Smith's alleged symptoms and credibility:

> After considering the evidence of the record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below.
>
> The claimant sought treatment at Huey P. Long Medical Center for her impairments. She had diagnoses of HIV, hypertension and peripheral neuropathy. A MRI of the lumbar spine, date May 23, 2007, showed minimal central protrusion with associated tiny annular tear at L4-5; moderate size central dis[k] protrusion at L4-5; and chronic changes of dis[k] desiccation at both L4-5 and L5-S1. However, on February 8, 2008, it was noted that claimant stopped taking her medication (Exhibits 1F, 6F, 8F and 11F).
>
> On May 31, 2006, it was noted that the claimant was working and she wanted and excuse from work. She also stated that her right foot was giving her problems and her hands were hurting and cramping. She had sought treatment with Maurice Gremillion, M.D. The claimant was diagnosed with plantar fasciitis and carpal tunnel (Exhibit 7F).
>
> B. Tillman, M.D. performed a consultative examination on November 20, 2006. During the examination, the claimant had decreased hand grip of 2/5 on the left and 3/5 on the right. Her corrected vision was 20/50. She also had decreased dexterity and she had a stiff and slow gait. The impression was HIV positive with report of muscle cramping, numbness, dry mouth, blurred vision, headaches,

anxiety and diarrhea. She also demonstrated possible synovitis of the hands and decreased range of motion and handgrip associated (Exhibit 3F and 9F). However, the claimant testified that she could grip with both her hands and she could pick up small objects.

\*     \*     \*

The claimant testified that during the day, she would read and play with her grandchild. She would go grocery shopping once a week with her daughter's help. She would also fold clothes and watch television. She would go to church once a week.

The claimant testified that she uses a cane to help with her hip. However, she also testified that the cane is not prescribed. The records indicate that on July 24, 2007, she was able to walk independently and perform all activities of daily living independently (Exhibit 10F).

The medical records support a finding that event with the side effects from her medication, the claimant could perform sedentary work.

(R. 17-18).

Since the ALJ made the mandatory indication of the basis for her credibility choices concerning Smith's complaints, and since her choices are not unreasonable, the finding that Smith's symptoms would not prevent her from performing work is proper. <u>Carry v. Heckler</u>, 750 F.2d 479, 485-86 (5th Cir. 1985). Substantial evidence supports the Commissioner's decision.

## Conclusion

Accordingly, based on the foregoing discussion, IT IS RECOMMENDED that Smith's appeal be DENIED and that the final decision of the Commissioner be AFFIRMED.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and

11

Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this _____ day of August, 2009.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE